NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In the Matter of the Estate of:

AGUSTINA MORALES DE GONZALEZ, *Deceased*.[1]

GABRIELA GONZALEZ, *Respondent/Appellant*,

v.

FIDUCIARY SOLUTIONS, LLC, et al., *Petitioners/Appellees*.

No. 1 CA-CV 25-0877 PB

FILED 06-30-2026

Appeal from the Superior Court in Maricopa County
No. PB2021-050018
The Honorable Vanessa N. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Gabriela Gonzalez, Phoenix
*Respondent/Appellant*

---

[1] For accuracy, it is ordered that the clerk of this court shall amend the caption of this appeal as shown. It is further ordered that the amended caption shall be used on all future documents filed in this matter.

Joy Garvey, PLLC, Scottsdale
By Joy A. Garvey
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

---

**P A T O N**, Judge:

¶1        Gabriela Gonzalez appeals from the superior court's order approving the settlement agreement between the Estate of Agustina Morales De Gonzalez ("Decedent"), by and through Fiduciary Solutions, LLC ("Fiduciary Solutions"), and Leticia Gonzalez.[2]  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Decedent passed away in October 2020.  In January 2021, Leticia filed an application for informal probate of will and informal appointment as personal representative ("PR").  Leticia alleged that she, Jose Gonzalez Morales, Maria Gonzalez Morales, and Gabriela were the Decedent's children.  Leticia filed Decedent's last will and testament (the "Will"), which devised all of Decedent's personal and real property to Leticia and nominated Leticia as the Estate's PR.  The Estate's only real property was a triplex (the "Property").  Leticia filed her letters of appointment and her acceptance of appointment as PR.

¶3        Gabriela filed a petition contesting the Will's validity, arguing it was unnotarized and fraudulently signed.  Leticia responded that two witnesses observed Decedent sign the Will.  Gabriela then amended her petition to allege Decedent was incapacitated and unduly influenced. Gabriela also filed separate petitions opposing Leticia's appointment as PR and requesting that she be appointed as PR. Leticia argued she was validly appointed in the Will and therefore had priority appointment for PR.  The court later suspended Leticia's appointment as PR but directed her to

---

[2] Because Gabriela and Leticia Gonzalez share the same last name, we refer to them by their first names for clarity and convenience.  For consistency, we refer to the other parties by their first names as well.

continue paying the mortgage, general maintenance costs, etc., during the pendency of the proceedings. Leticia and Gabriela later stipulated to the appointment of a representative from Fiduciary Solutions as PR.

¶4 In March 2021, the court held a hearing on Gabriela's petition contesting the Will and her petition opposing Leticia as PR. The court noted Maria was "the adopted daughter of the Decedent." But in December 2021, Gabriela moved to remove Maria as an heir, arguing she was never legally adopted by the Decedent.

¶5 In April 2022, Leticia petitioned the court for attorneys' fees incurred from Gabriela's numerous filings. Gabriela objected. The court admonished Gabriela "as to the unauthorized practice of law and . . . cautioned that non-lawyers may only represent and speak for themselves in court proceedings." It subsequently granted Leticia's amended petition for attorneys' fees.

¶6 The court held a hearing regarding the Will's validity and the petition for adjudication of intestacy and formal PR appointment. The court found the Will was fraudulent and Leticia procured it by undue influence, and it was therefore invalid, but Decedent was not incapacitated. It later issued another minute entry, correcting its fraud finding to say the Will was "NOT fraudulent."

¶7 Gabriela continued to file numerous pleadings, so in February 2023, the court designated her a vexatious litigant and ordered her not to file any further pleadings without the court's permission. Meanwhile, Leticia filed a petition for unjust enrichment, constructive trust, and injunctive relief in conjunction with two claims against the Estate totaling over $900,000. In May 2023, the PR allowed $32,875.60 of the $974,564.89 Leticia claimed.

¶8 In September 2023, the court confirmed an agreement between the heirs and the PR that Leticia would pay at least $5,500 to bring the Property mortgage current and the monthly mortgage thereafter, to be reimbursed by the Estate as an administrative cost upon its closure. Gabriela then filed a petition alleging Leticia committed elder abuse, financial exploitation, and psychological and emotional abuse towards Decedent. The court found "the [p]etition was inappropriately filed for numerous reasons," reminding Gabriela of her vexatious litigant designation. Leticia and the PR jointly moved for attorneys' fees incurred in responding to Gabriela's petition, which the court granted.

3

¶9  Leticia and the PR engaged in settlement negotiations (in which Gabriela participated) regarding Leticia's remaining claims against the Estate and her petition for unjust enrichment, constructive trust, and injunctive relief. Although they reached an agreement (the "Settlement Agreement") that Leticia would not pursue her denied claims against the Estate, the parties were unable to reach a global settlement on all issues. In April 2025, the PR petitioned for approval of settlement, distribution, and closing of the Estate and the discharge of it as PR. The Settlement Agreement provided that although Gabriela owed $1,504 to the Estate and $15,906 to Leticia, they would not pursue the remaining $11,713.74 Gabriela owed the Estate. The court disposed of Leticia's petition for unjust enrichment, constructive trust, and injunctive relief, found Maria was an heir, and approved the Settlement Agreement.

¶10  Gabriela timely appealed the superior court's order approving the Settlement Agreement, dismissing Leticia's petition for unjust enrichment, constructive trust, and injunctive relief with prejudice, and discharging the PR. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(9).

## DISCUSSION

¶11  We note at the outset two jurisdictional flaws in Gabriela's appeal: (1) the notice of appeal challenges the superior court's failure to rule on two petitions and (2) the opening brief challenges an order not listed in the notice of appeal. *See Musa v. Adrian*, 130 Ariz. 311, 312 (1981) (the Court of Appeals has an independent duty to determine whether it has jurisdiction).

¶12  First, Gabriela's notice of appeal claims the court failed to rule on her petition for elder abuse, financial exploitation, and psychological and emotional abuse and her petition challenging Maria's heirship. The superior court dismissed the elder abuse petition on November 6, 2023, noting Gabriela's petition "was inappropriately filed for numerous reasons" and reminding Gabriela of its previous finding that she "[was] a vexatious litigant." And the court ruled on the petition challenging heirship on February 7, 2023, finding the petition was moot and denying any requested relief. These rulings are not final judgments, and Gabriela never requested the court to enter final judgment language under Arizona Rule of Civil Procedure 54(c). *See In re Guardianship of Sommer*, 241 Ariz. 308, 311, ¶ 11 (App. 2016) ("[O]rders are only appealable under [Section] 12-2101(A)(9) 'when they are in the form of a final judgment or decree . . . .'") (citation omitted). Further, none of these rulings constitute

"intermediate orders involving the merits of the action and necessarily affecting the judgment." A.R.S. § 12-2102(A). Thus, to the extent Gabriela is appealing these two rulings, we do not have jurisdiction to consider them.

¶13 We also note that Gabriela's opening brief does not comply with Arizona Rule of Civil Appellate Procedure ("ARCAP") 13(a)(4). An appellant must include a statement of the case that "concisely state[s] the nature of the case, the course of the proceedings, the disposition in the court from which the appeal is taken, and the basis of the appellate court's jurisdiction." ARCAP 13(a)(4). Gabriela's statement of the case is not concise. It also contains factual inaccuracies regarding the proceedings. For example, Gabriela states the court failed to rule on the petition for elder abuse, financial exploitation, and psychological and emotional abuse, and the petition to challenge maternity action for heirship. But the court denied both petitions after holding virtual hearings on each one.

¶14 Additionally, Gabriela's statement of the facts contains factual inaccuracies. For example, Gabriela states the PR reversed its decision to disallow Leticia's claim. But the PR did not reverse its decision. Instead, it filed a notice of partial allowance and disallowance as to Leticia's claim 1, whereas the prior notice pertained to Leticia's claim 2. As to claim 1, the PR allowed $32,875.60 of the $954,377.39 claimed. Further, Gabriela states Leticia neglected to repair the roof and maintain the Property, pursuant to the court's August 2021 order that Leticia "maintain the payments of mortgage, property taxes, homeowner's insurance, utilities, **and general maintenance costs of the real property**." In support of her statement, she cites the court's minute entry approving an agreement between the parties that Leticia will pay at least $5,500 to bring the Property mortgage current and she would pay the monthly mortgage thereafter. But Leticia testified she paid the mortgage while the litigation was pending, and she only stopped paying it in 2023 after the court ordered her to because the PR was taking over. The PR confirmed the same, noting Leticia paid $50,059.29 towards the mortgage.

¶15 Gabriela's reply brief also introduces new arguments that were not raised in her opening brief, which we will not consider. *See Dawson v. Withycombe*, 216 Ariz. 84, 111, ¶ 91 (App. 2007) (courts will not consider issues or arguments raised for the first time in a reply brief). For example, Gabriela argues the PR did not speak Spanish, so she could not communicate with all the heirs, and that it was crucial that the PR be bilingual. She also contends that the PR's attorney "mislead [sic] [her] about documents that she should have filed to defend her position" and

5

that the PR "reversed the ruling of [the] [p]robate court to remove Maria Dolores as heir[] of the [E]state."

¶16 Nevertheless, to the extent Gabriela is arguing that the superior court erred by approving the Settlement Agreement, we disagree. We review the superior court's approval of a settlement agreement for abuse of discretion. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 362, ¶ 48 (App. 2014). Section 14-3715(17) permits a PR to "[e]ffect[uate] a fair and reasonable compromise with any debtor or obligor."

¶17 Per the Settlement Agreement, Leticia would pay the PR $52,875.85 for the Estate's debts and distributions and receive the Property as her sole and separate property after working with the mortgage lender on the Property. Leticia would also release all claims against the Estate and dismiss all pending petitions with prejudice. The PR testified that the Property was valued at $380,000, and after deducting the mortgage payments Leticia made, her allowed creditor claims, and her payment of $52,000 for administrative fees and distributions to the heirs, the value of her settlement was $168,799.14. Leticia testified she gave up substantial amounts of her creditor's claim to reach the Settlement Agreement.

¶18 Leticia had claims against the Estate totaling almost $975,000 and a pending petition for unjust enrichment, constructive trust, and injunctive relief. The Estate only had two assets: the Property worth $380,000, less about $100,000 remaining on the mortgage, and a bank account worth $400. At the evidentiary hearing, the court heard testimony that the PR weighed the cost of litigation, Leticia's claims, the roughly $50,000 she had paid towards the mortgage, and determined that the best outcome for the Estate would be for Leticia to pay $53,000 to the PR in exchange for the Property.

¶19 In approving the Settlement Agreement, the court stated that based on the PR's testimony, the Estate had no liquidity and therefore no money to defend the pending litigation or Leticia's petition for unjust enrichment, constructive trust, and injunctive relief. In other words, as Leticia notes, the Settlement Agreement reasonably prevented the Estate from facing more exposure and litigation than it had the means to handle. Maria also testified that she agreed the PR should enter the Settlement Agreement with Leticia. Reasonable evidence supports the court's finding that the Settlement Agreement constituted a fair and reasonable compromise, and we will not reweigh the evidence. *See In re Ghostley*, 248 Ariz. 112, 117, ¶ 21 (App. 2020) ("It is not our function to reweigh the facts

. . . .") (citation omitted) (internal quotation marks omitted). The superior court did not abuse its discretion in approving it.

¶20 As to Gabriela's argument that the court erred in considering Leticia's petition for unjust enrichment, constructive trust, and injunctive relief, we are unpersuaded. Gabriela contends the record does not support Leticia's petition, and, in any event, it was untimely. Leticia filed a petition for unjust enrichment, constructive trust, and injunctive relief on April 21, 2023. Section 14-3801(B) requires known creditors to present their claim "within four months after the published notice." The notice was published on December 23 and December 30, 2022, and January 6, 2023. And Leticia's claim was filed on April 21, 2023, within the four-month timeframe prescribed by Section 14-3801(B). Gabriela believes it was published on August 8, 2022, but that refers to the publication giving notice of a hearing on a different petition. We find no error. Because the court disposed of this petition with prejudice on September 25, 2025, when it approved the Settlement Agreement, we do not reach Gabriela's argument that the petition was unsupported.

¶21 Gabriela also contends the superior court erred in imposing "substantial sanctions of $15,906.00" on her when she filed her petition for elder abuse, financial exploitation, and psychological and emotional abuse towards Decedent. As part of the attorneys' fees award, the court further ordered Gabriela to pay $5,000 in punitive damages to Leticia under Section 12-349. Gabriela contends this was an "excessive [award of] punitive damages." "Review of an attorney fees award under [Section] 12-349 presents a mixed question of fact and law," which we review de novo. *Ariz. Republican Party v. Richer*, 257 Ariz. 237, 242, ¶ 10 (2024).

¶22 Under Section 12-349(A)(1), attorneys' fees, including "double damages of not to exceed five thousand dollars," must be awarded if a party "[b]rings or defends a claim without substantial justification." "[W]ithout substantial justification" is defined as the "claim or defense is groundless and is not made in good faith." A.R.S. § 12-349(F). A groundless claim is one where "the proponent can present no rational argument based upon the evidence or law in support of that claim." *Rogone v. Correia*, 236 Ariz. 43, 50, ¶ 22 (App. 2014) (citation omitted). We review whether a claim is groundless "through an objective lens, without regard to the [claimant's] subjective beliefs." *Ariz. Republican Party*, 257 Ariz. at 243, ¶ 15.

¶23 In denying Gabriela's petition for elder abuse, financial exploitation, and psychological and emotional abuse, the court ordered that if Leticia's counsel requested attorneys' fees, then Gabriela would be

allowed to respond to that pleading only. Leticia and the PR jointly requested attorneys' fees for addressing and appearing for a hearing on Gabriela's petition. The court ordered Gabriela to pay $7,315 for Leticia's attorneys' fees, $508.50 for the Estate's attorneys' fees, $256.50 for the Estate's fiduciary fees, and $739 for the Estate's attorneys' fees related to drafting a reply to Gabriela's response.

¶24 In awarding the joint request for attorneys' fees, the court found Gabriela's conduct had been unreasonable and vexatious. At the hearing on Gabriela's petition, the court reminded her not to file documents on behalf of anyone other than herself because the petition noted it was filed on behalf of her and her brothers. Further, the court noted "the petition [was] inappropriately filed for a multitude of reasons," including that Section 46-456 does not permit individuals outside a limited number of people to file this type of petition without leave of the court. The court also stated a finding of vulnerability must be found before that type of petition could be filed and that the court had not lifted its vexatious litigant designation from Gabriela, and she was therefore precluded from filing the petition absent the court's approval. On this record, we cannot say the court erred in granting the joint motion for attorneys' fees.

¶25 Gabriela requests attorneys' fees on appeal, but "parties who represent themselves in a legal action are not entitled to recover attorney[s'] fees." *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC*, 235 Ariz. 125, 126, ¶ 5 (App. 2014). We do, however, grant Leticia's request for her reasonable attorneys' fees under Sections 12-349(A)(1) and 14-1105. As the prevailing party, she is entitled to recover her taxable costs upon compliance with ARCAP 21(b).

**CONCLUSION**

¶26 We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR

8